UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
OHNO ENTERPRISES,                         **MEMORANDUM & ORDER**
A NEVADA FAMILY LIMITED PARTNERSHIP,      15-CV-6675 (KAM) (RER)

        Plaintiff,

  -against-

HUBERT ALLEN,

        Defendant.
----------------------------------------X

**MATSUMOTO, United States District Judge:**

On June 26, 2015, plaintiff Ohno Enterprises ("plaintiff"), a Nevada family limited partnership, brought this action against defendant Hubert Allen ("defendant") in the Supreme Court of the State of New York, Kings County, seeking, *inter alia*, to dissolve a partnership entered into by the two parties and sell their partnership's real property. Almost four months after he was served with the summons and complaint in July 2015, defendant filed an unsigned notice of removal in this court on November 23, 2015. Plaintiff subsequently filed a motion to remand the action to state court, arguing that the removal was untimely. Because defendant indisputably knew facts that enabled him to assess removability at the time he was served with the complaint, and the removal occurred well outside the 30-day window prescribed by 28 U.S.C. § 1446(b)(1),

defendant's tardy removal was not excusable and plaintiff's motion to remand is GRANTED.

## BACKGROUND

The following facts derive principally from the complaint, the notice of removal, and the briefing on the instant motion seeking remand.[1] Plaintiff is a Nevada Family Limited Partnership formed by Liam D. Fleming and Mark Edward Fleming. (*See* ECF. No. 6, Complaint ("Compl.") at ¶¶ 2-3.) On June 12, 2001, Liam Fleming, as "general partner and on behalf of" plaintiff, entered into an "Understanding and Letter Agreement" with defendant to "memorialize" the terms of an oral general partnership through which they purchased 66 Rogers Avenue ("66 Rogers Avenue" or "the property") in Brooklyn, New York. (*Id.* at ¶ 10.) As equal general partners, plaintiff and defendant each obtained a 50 percent interest in the property. (ECF No. 1, Notice of Removal, at ¶ 19; ECF No. 1, Affidavit in Support of Notice of Removal by Hubert Allen ("Allen Aff.") at ¶ 4; *see also* Compl. at ¶ 12.) Although title to 66 Rogers Avenue was placed in defendant's name, the partnership agreement

---

[1] *See The Lab, LLC v. Travelers Prop. Cas. Co. of Am.*, No. 14-CV-7773, 2016 WL 264939, at *1 (S.D.N.Y. Jan. 21, 2016) (taking facts alleged in complaint as true in deciding motion to remand); *Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, No. 14-CV-1936, 2015 WL 1433320, at *1 (S.D.N.Y. Mar. 30, 2015) (same). The court is permitted to look to documents appended to a notice of removal or a motion to remand to determine removability. *See Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010); *Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511, 514 (2d Cir. 1957).

expressly made the property an asset of the partnership. (Compl. at ¶ 15.)

When the parties purchased 66 Rogers Avenue in 2001, they paid a total of $170,000. (Allen Aff. at ¶ 5.) Defendant estimates that the value of the property is now between $1,700,000 and $2,116,349. (*Id.*; ECF No. 5, Ex. 4, Defendant's Opposition to Plaintiff's Motion to Remand ("Def. Mem.") at 2.) When Liam Fleming died in 2014, a Nevada state court appointed Mark Fleming as the personal representative of Liam Fleming's estate. (Compl. at ¶¶ 4-7.) Liam Fleming's death led to a dispute after his widow expressed her desire to sell 66 Rogers Avenue. (*Id.* at ¶¶ 17-27, 35-38; *see also* Allen Aff. at ¶ 7.)

On June 26, 2015, plaintiff brought this action in New York state court seeking, *inter alia*, to wind up the partnership and force the sale of 66 Rogers Avenue. (Compl. at ¶¶ 45, 49.) Among other relief requested, plaintiff sought "judgment for one half of the proceeds of the sale of 66 Rogers Avenue." (*Id.* at ¶ 49(j).) On July 24, 2015, plaintiff served defendant with the summons and complaint. (Allen Aff. at ¶ 9; ECF No. 5, Declaration of Ali Weinberg in Support of Plaintiff's Motion to Remand ("Pl. Mem.") at 1; ECF No. 5, Ex. 1.) Defendant alleges that he "promptly turned over the summons and complaint to Ms. Ellen Edwards, Esq.," his prior counsel. (Notice of Removal at ¶ 10.) Defendant, however, failed to timely answer the complaint

in state court. On September 11, 2015, plaintiff filed a motion seeking a default judgment in state court, which remains pending. (Pl. Mem. at 1-2.)

On November 20, 2015, defendant removed the action to this court, although he failed to file a signed notice of removal (or attach a copy of all "process, pleadings, and orders") as required by 28 U.S.C. § 1446(a).[2] (*See* Notice of Removal.) On November 23, 2015 plaintiff timely moved to remand the matter to the Supreme Court of the State of New York, Kings County. (ECF No. 3, Plaintiff's Motion to Remand.) The parties subsequently briefed the remand issue. (*See* Pl. Mem.; Def. Mem.; ECF No. 5, Ex. 5, Plaintiff's Reply Memorandum of Law ("Pl. Reply").)

## **DISCUSSION**

In opposing plaintiff's remand motion, defendant argues that the removal was timely because plaintiff's initial

---

[2] The court also notes that this action was removed in violation of the "forum defendant rule" — codified at 28 U.S.C. § 1441(b)(2) — which precludes removal in a diversity action "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Because defendant is a New York citizen (Allen Aff. at ¶ 1), § 1441(b)(2) would generally preclude removal. The court recognizes, however, that plaintiff has not raised the forum defendant rule in objecting to removal and that § 1441(b) is a "rule of procedure and does not state a jurisdictional requirement." *Shapiro v. Logistec USA Inc.*, 412 F.3d 307, 313 (2d Cir. 2005); *see also Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 50 n. 2 (2d Cir. 2000) (holding that although the defendant was a forum state citizen and could therefore not remove under § 1441(b)(2), "[plaintiff] waived his right to object to this procedural defect . . . by failing to raise the objection within 30 days of removal").

pleading does not explicitly state the amount in controversy and, therefore, the 30-day deadline for removal generally prescribed by 28 U.S.C. § 1446(b)(1) was tolled. (*See* Def. Mem. at 2.) Defendant also claims that equity demands he not suffer the consequences of his former attorney's "abandonment and negligence" via a state court default judgment. (*See id.* at 3.) The court will first provide the legal standards governing removal of state actions to federal court, and turn next to defendant's arguments.

I. *Legal Standard Governing Removal*

Under 28 U.S.C. § 1332(a), district courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and there is diversity of citizenship. If the district court would have original jurisdiction, the defendant may remove an action from the state court to the federal district court for the district within which the state action is pending. 28 U.S.C. § 1441(a). An action otherwise removable based on diversity "may not be removed if any of the parties . . . properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

Removal to a federal district court generally must occur "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading

setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). An exception exists to the 30-day removal deadline, however, when "the initial pleading is not removable." *Id.* § 1446(b)(3). In circumstances where the initial pleading is not removable,

> a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which *it may first be ascertained* that the case is one which is or has become removable.

*Id.* (emphasis added). Essentially, § 1446(b)(3) provides that the 30-day removal clock is not triggered until a defendant can determine that a case is removable.[3]

The Second Circuit has, on three recent occasions, addressed the applicability of § 1446(b) in the context of diversity actions. First, in *Whitaker v. American Telecasting, Inc.*, the Second Circuit addressed a suit initially brought by an attorney in New York state court — principally against his former client and an out-of-state corporation that had opposed the client — alleging that the defendants had conspired to deprive him of legal fees. 261 F.3d 196, 199, 207, 209 (2d Cir. 2001). A summons with notice served on defendants lacked the

---

[3] Section 1446(c)(1) contains a backstop provision preventing an extremely delayed removal. *See* § 1446(c)(1) ("A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.").

addresses of the defendants, but a later-served complaint rendered the removability of the action indisputable. *Id.* at 206. Defendants' removal could only be considered timely if the 30-day removal clock had been triggered by the later-served complaint. *Id.* at 199-200, 206. The Second Circuit held that a case

> is removable when the initial pleading enables the defendant to intelligently ascertain removability from the face of such pleading, so that in its petition for removal, the defendant can make a short and plain statement of the grounds for removal as required by 28 U.S.C. § 1446(a). A pleading enables a defendant to intelligently ascertain removability when it provides the necessary facts to support the removal petition. In cases where removal is based upon diversity, the facts required to support the removal petition include the amount in controversy and the address of each party. While this standard requires a defendant to apply a reasonable amount of intelligence in ascertaining removability, it does not require a defendant to look beyond the initial pleading for facts giving rise to removability.

*Id.* at 205-06 (internal quotation marks, citations, and alterations omitted). Because only the complaint permitted defendants to intelligently ascertain removability, the removal was timely. *Id.* at 206.

Subsequently, the Second Circuit narrowed the holding in *Whitaker*. In *Moltner v. Starbucks Coffee Co.*, the plaintiff brought a personal injury suit in New York state court against Starbucks alleging that she suffered burns from a hot beverage, but did not specify the damages she sought. 624 F.3d 34, 35-36

7

(2d Cir. 2010). Three months after the plaintiff filed suit, the plaintiff revealed in response to a letter from the defendant that she sought more than $75,000 in damages. *Id.* at 36. Starbucks removed the suit within 30 days of receiving the plaintiff's letter. *Id.* The plaintiff sought a remand to state court, arguing that Starbucks could have applied *Whitaker*'s "reasonable amount of intelligence" standard to the complaint to ascertain that the amount in controversy exceeded $75,000. *Id.* at 37. The Second Circuit rejected the plaintiff's argument, and held that "the removal clock does not start to run until the plaintiff serves the defendant with a paper that ex*plicitly specifies the amount of monetary damages sought*." *Id.* at 38 (emphasis added).

Finally, in *Cutrone v. Mortgage Electronic Registration Systems, Inc.*, the Second Circuit explained that in Class Action Fairness Act ("CAFA") cases, the "*Moltner* standard" — despite *Moltner*'s language regarding "explicit[]" specification of damages sought — still required defendants to "'apply a reasonable amount of intelligence in ascertaining removability,'" but did not require an independent investigation. 749 F.3d 137, 143 (2d Cir. 2014) (quoting *Whitaker*, 261 F.3d at 206). The *Cutrone* court explained:

> While a defendant must still apply a "reasonable amount of intelligence" to its reading of a plaintiff's complaint, we do not require a defendant

8

> to perform an independent investigation into a plaintiff's indeterminate allegations to determine removability and comply with the 30-day periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3). Thus, a defendant is not required to consider material outside of the complaint or other applicable documents for facts giving rise to removability, and the removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not triggered until the plaintiff provides facts explicitly establishing removability *or alleges sufficient information for the defendant to ascertain removability.*

*Id.* at 145 (emphasis added). *Whitaker*'s "reasonable amount of intelligence" standard, in other words, survived *Moltner*.[4]

"[F]ederal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (internal quotation marks and citation omitted). Moreover, federal courts stringently enforce the 30-day removal timeline absent a showing of waiver or estoppel. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (recognizing that the "statutory procedures for removal are to be strictly construed"). Although the pending motion is plaintiff's motion for remand, the burden is on defendant to establish removability. *See Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (noting that on a motion

---

[4] Although *Cutrone* dealt with removal in the context of CAFA, which sets forth a $5,000,000 jurisdictional threshold, *see* 28 U.S.C. § 1332(d)(2), "the Second Circuit's opinion does not rest on or even discuss anything about CAFA that would limit the force of its holding in non-CAFA cases." *Veleron Holding, B.V. v. Stanley*, No. 14-CV-7874, 2014 WL 6386733, at *3 (S.D.N.Y. Nov. 13, 2014).

to remand, "the defendant bears the burden of demonstrating the propriety of removal" (internal quotation marks and citation omitted)); *Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 436 (S.D.N.Y. 2006) ("At all times the party asserting jurisdiction bears the burden of proof that . . . procedural requirements have been met.").

## II. *The 30-Day Removal Deadline Was Not Tolled*

Here, the court would have original jurisdiction over the matter in controversy. First, the parties are diverse. The plaintiff partnership is a partnership created under Nevada law. (Compl. at ¶ 2.) Plaintiff's only living member, Mark Fleming, is a citizen and resident of Nevada.[5] (Def. Mem. at 2.) Defendant is a citizen and resident of New York. (Compl. at ¶ 1; Allen Aff. at ¶ 1.) Second, the amount in controversy exceeds $75,000. Plaintiff seeks, *inter alia*, half of the proceeds from the sale of real property located at 66 Rogers Avenue. (Compl. at ¶ 49(j).) Defendant admits that the value of 66 Rogers Avenue was $170,000 in 2001 (Allen Aff. at ¶ 5), and represents that the property is now worth between $1,700,000 and $2,116,349. (*See* Allen Aff. at ¶ 5; Def Mem. at 2; Def. Mem., Ex. A.)

---

[5] *See Astra Oil Trading v. PRSI Trading Co. LP*, 794 F. Supp. 2d 462, 469 (S.D.N.Y. 2011) ("Because defendant is a limited partnership, diversity jurisdiction in a suit against it depends on the citizenship of all of its members.").

In seeking remand, plaintiff does not argue that the case was never removable, but only that the removal was untimely. *See Cutrone*, 749 F.3d at 146 ("[W]hether a basis for removal exists and whether removal is timely are two separate questions."). Because defendant did not remove the case until approximately four months after service of the complaint, well beyond the 30-day window prescribed by § 1446(b)(1), plaintiff maintains that this action must be remanded. Defendant, in response, argues that § 1446(b)(1)'s 30-day clock was not triggered because plaintiff never "explicitly specif[ied] the amount in controversy." (Def. Mem. at 2.) Defendant relies exclusively on *Moltner*, which, as noted above, held that the "removal clock does not start to run until the plaintiff serves the defendant with a paper that *explicitly specifies the amount of monetary damages sought*." 624 F.3d at 38 (emphasis added).

In isolating the *Moltner* language regarding explicit specification of damages, however, defendant overlooks the Second Circuit's decisions both before and after *Moltner*. In *Whitaker*, as discussed earlier, the Second Circuit held that a defendant must "apply a reasonable amount of intelligence in ascertaining removability." 261 F.3d at 206. In *Cutrone*, which post-dated *Moltner*, the Second Circuit reaffirmed *Whitaker* and clarified that the removal deadline under § 1446(b) in a CAFA case is triggered when an initial pleading or other

11

document either: (1) "explicitly specifies the amount of monetary damages sought" or (2) "sets forth facts from which an amount in controversy in excess of [the jurisdictional threshold] can be ascertained." 749 F.3d at 145. Because plaintiff has not explicitly specified the amount of recovery sought from the 50 percent share of proceeds from the sale of the property, and because there has never been a dispute regarding complete diversity, the only question is whether the complaint (no other post-complaint document is at issue) provided sufficient information for defendant to ascertain that over $75,000 was in controversy in this action.[6] *See id.*

Plaintiff's initial complaint was served on defendant on July 24, 2015. (Pl. Mem., Ex. A.) The complaint put in issue

---

[6] Significantly, defendant only argues that plaintiff failed to *explicitly* state the damages amount. He has never argued that he did not know the amount in controversy, nor does defendant assert that the complaint did not permit him to ascertain the value of this action. (*See* Def. Mem. at 2-3.) Nowhere in defendant's affidavit in support of removal does he allege that he was unaware of the value of this action. Instead, defendant's affidavit lays the blame for the untimely removal exclusively on his prior counsel. (*See* Allen Aff. at ¶ 12 ("The *only reason* the summons and complaint was not answered in a timely manner was because I relied on [prior counsel's] promise that she would draw up an answer and serve it to Plaintiff in an appropriate and timely answer." (emphasis added)).) Defendant's failure to argue that he could not ascertain the value of this action provides an independent basis for the court to reject defendant's argument regarding § 1446(b), because an explicit statement of damages sought is only one of two ways to trigger the § 1446(b) removal clocks. *See Cutrone*, 749 F.3d at 145 ("[T]he removal clocks of 28 U.S.C. § 1446(b) are not triggered until the plaintiff serves the defendant with an initial pleading or other document that explicitly specifies the amount of monetary damages sought *or sets forth facts from which an amount in controversy in excess of* [*the jurisdictional threshold*] *can be ascertained*." (emphasis added)).

plaintiff's 50 percent stake in 66 Rogers Avenue when it sought, *inter alia*, judgment for "one half of the proceeds of the sale of 66 Rogers Avenue." (*See* Compl. at ¶ 49(j).) The value of the property at the time the parties purchased it in 2001 was $170,000, according to defendant's own affidavit. (Allen Aff. at ¶ 5.) Defendant represents that the property is now valued at between $1,700,000 and approximately $2,116,349, and that he has managed and improved the property. (*Id.; see also* Def. Mem. at 2.) This is not a case where the court has to guess at whether the defendant subjectively knew about the amount in controversy in the litigation. Here, defendant has effectively admitted that he did know the amount in controversy.

Even if defendant had no knowledge regarding the extensive appreciation of the property's value since the initial purchase in 2001, defendant would have been on notice that plaintiff's 50 percent share of the property (valued at $170,000 at the time of purchase) was worth $85,000 (Allen Aff. at ¶ 5), an amount exceeding the jurisdictional threshold by $10,000. Defendant has represented, however, that he had intimate knowledge regarding the property. In his affidavit in support of removal, defendant stated that "[d]uring the fourteen (14) years of ownership of the premises I have affected a complete renovation of same to make it fit for human habitation; performed all maintenance and repairs; managed the premises;

13

paid all mortgage payments, insurance and real estate taxes. During this same period plaintiff contributed approximately Five Thousand Dollars ($5,000.00) towards all of the above." (*Id.* at ¶ 6.) Defendant's payment of real estate taxes and insurance for the property each year since 2001 in particular establishes his first-hand familiarity with the current fair market value of the property, which defendant states is between $1,700,000 and approximately $2,116,000. (Allen Aff. at ¶ 5; Def. Mem. at 2.).[7] If defendant had knowledge regarding the current fair market value of the property, he also had knowledge that the amount in controversy in this action far exceeded the jurisdictional diversity threshold. *See, e.g.*, *Caribbean Fertilizers Grp., Ltd. v. Fersan Fertilizantes Santo Domingo, C. por A.*, No. 02-CV-9919, 2003 WL 21961124, at *3 (S.D.N.Y. Aug. 18, 2003) (finding defendant's removal untimely in an action seeking lost profits where defendant was on notice that the amount in controversy exceeded the jurisdictional threshold based on defendant's familiarity with plaintiffs' profits and the parties' prior administrative litigation involving the same subject matter).

Defendant cannot have it both ways: he cannot claim that he has a greater stake in the property than plaintiff (based on his labor, investment, and close management of the

---

[7] *See In re Ancona*, No. 14-10532, 2016 WL 1399265, at *5 (Bankr. S.D.N.Y. Apr. 6, 2016) ("[R]eal estate taxes and property insurance are all clearly related to the value of the Lease or Building . . . .").

property) while simultaneously arguing that he could not have at least known the property's approximate current value (half of which still far exceeds the jurisdictional threshold). Further, defendant does not explain when or how he determined that the value of this action exceeded $75,000, which substantially weakens any suggestion that he did not know upon service of the complaint that the amount in controversy permitted removal.

Accordingly, § 1446(b)(3) did not toll the time for removal based on a lack of specificity regarding the damages sought by plaintiff. The complaint, with its specification that half the value of 66 Rogers Avenue was in issue, "set[] forth facts from which an amount in controversy in excess of [the jurisdictional threshold] could be ascertained," in light of defendant's admission that he knew the value of the property. *Cutrone*, 749 F.3d at 148; *see also Whitaker*, 261 F.3d at 206 (requiring defendants to "apply a reasonable amount of intelligence in ascertaining removability"). The complaint therefore triggered the § 1446(b)(1) removal clock when service was effected on July 24, 2015. Defendant had 30 days — until August 24, 2015 — to remove this action. *See* § 1446(b)(1); *see also* Fed. R. Civ. P. 6(a)(1). Defendant did not remove until November 20, 2015, 88 days after the deadline for removal under § 1446(b)(1).

*III. Defendant's Former Attorney's Purported Negligence Did Not Toll the Removal Deadline*

Defendant next argues that "[p]rinciples of equity" demand that the court permit his belated removal of this action because he "should not be penalized, via a default judgment, for the egregious abandonment and negligence of his former attorney." (Def. Mem. at 3.) Plaintiff argues that avoiding a default in state court is not a valid basis for removal and, in any event, that there is no evidence defendant ever even contacted his prior attorney. (Pl. Mem. at 2; Pl. Reply at 5.)

Defendant relies on *Addison v. Reitman Blacktop, Inc.*, which recognized that "default judgments are disfavored" and that a "clear preference exists for cases to be adjudicated on the merits." 272 F.R.D. 72, 77 (E.D.N.Y. 2010) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2nd Cir. 2005)) (internal quotation marks omitted). *Addison* is inapposite. *Addison* was a garden variety default case in which a complaint filed in federal court was not timely answered. *Id.* at 74-75. The clerk of court entered a notation of default, the defendants moved to set aside the default, and the court granted defendants' motion in part based on the "well-established preference for litigating disputes on the merits." *Id.* at 75, 82. *Addison* did not involve the federalism and statutory removal deadline concerns presented by this action. In addition, there

16

was no pending state court motion for default judgment, nor did *Addison* involve an action that originated in state court. That default judgments are generally disfavored in federal court and will not be granted readily does not speak to whether the court in this action should excuse a late removal.

Further, it is not at all clear that defendant will in fact be penalized for his former attorney's alleged "egregious abandonment and negligence" with a default judgment in state court. (Def. Mem. at 3.) The state court docket reflects only a pending motion seeking a default judgment, but no action on the motion by the court. New York law expressly permits courts to exercise their discretion "in the interests of justice to excuse delay or default resulting from law office failure." N.Y. C.P.L.R. § 2005; *see also Cruz v. TD Bank, N.A.*, No. 10-CV-8026, 2015 WL 437393, at *3 (S.D.N.Y. Feb. 3, 2015) (recognizing that New York courts can excuse a default caused by an attorney's negligence); 73 N.Y. Jur. 2d Judgments § 297 ("The adoption of C.P.L.R. 2005, which permits the courts to vacate a default that had occurred solely as a result of law-office failure, is in general accord with earlier law to the effect that, by virtue of its inherent power, a court may open a default judgment due to inadvertence and neglect of attorneys." (footnotes omitted)). Accordingly, defendant will be free after remand to state court to seek relief from default and litigate whether default should

17

be excused based on his attorney's purported negligence that resulted in his failure to timely answer the state court complaint.

## CONCLUSION

Defendant has not met his "burden of demonstrating the propriety of removal." *WorldCom, Inc.*, 368 F.3d at 100 (internal quotation marks and citation omitted). For the reasons stated above, plaintiff's motion to remand this action to state court is GRANTED. The Clerk of Court is respectfully directed to remand this action and close the case.

**SO ORDERED.**

Dated:  June 22, 2016
        Brooklyn, New York

_____/s/_____
Kiyo A. Matsumoto
United States District Judge